IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULIUS LEE JACKSON,

      Plaintiff,                         No. CIV S-04-0983 LKK GGH P

    vs.

THE STATE OF CALIFORNIA, et al.,    <u>ORDER and FINDINGS AND</u>

      Defendants.             <u>RECOMMENDATIONS</u>

_____/

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are 1) plaintiff's December 2, 2004 request for injunctive relief, to which defendants filed their opposition on March 24, 2005,[1] after which plaintiff filed his reply on April 5, 2005; 2) plaintiff's January 3, 2005 request for access to the courts and his legal property and for a continuance to submit court documents; 3) plaintiff's January 6, 2005 duplicative request for access to the courts and his legal property which abandons his request for

---

[1] Defendants, who have yet to formally appear in this case, were directed to file their response to the motion by order filed on January 21, 2005. That order noted that the order directing service of the first amended complaint was being concurrently filed; however, the Clerk of the Court did not file the order directing service until January 25, 2005. Defendants were granted an extension of time to file their response by order filed on March 24, 2005.

1

a continuance or extension of time to submit court documents.

<u>First Amended Complaint</u>

Plaintiff, an inmate at High Desert State Prison (HDSP), proceeds on a first amended complaint against nine defendants: Sgt. Nuchols, Sgt. Brewer, Correctional Officer (C/O) Von Rader, Medically Trained Assistant (MTA) Bates, C/O Armstrong, C/O Campbell, C/O Morring, C/O Chacon and C/O Barnard.[2]

On December 19, 2003, defendants Nuchols and Brewer grabbed plaintiff's arms while he was handcuffed behind his back and slammed him face first into a wall and then onto the floor, after which they lay their full body weight on top of him. First Amended Complaint (FAC), p. 3. Thereafter, defendant Nuchols began jabbing plaintiff's left ear with his fingers "as hard as he could, drawing blood" as defendant Brewer tore off plaintiff's boots and socks. <u>Id</u>. Then defendants Nuchols, Brewer and Von Rader grabbed plaintiff, who now had on leg shackles, from the floor with force and slammed him into a wire cage. <u>Id</u>. Defendant Bates then refused plaintiff medical attention. <u>Id</u>.

Some two and a half hours later, plaintiff was returned to his cell; defendant Armstrong had removed all of plaintiff's personal property, including his medications, refusing to give back to plaintiff his back and neck medications for 30 hours, causing plaintiff to suffer. FAC, (unnumbered), p. 3-A.

On January 16, 2004, defendant Armstrong informed plaintiff that defendants Nuchols and Brewer wanted to see him, after which he was taken from his cell to which he was never returned. <u>Id.</u> Instead, defendants Nuchols, Brewer, Von Rader and Bates moved plaintiff in retaliation for having filed an inmate appeal against them for their actions on December 19, 2003. <u>Id.</u> Also on January 16, 2004, defendants Campbell and Morring conspired to set plaintiff

---

[2] The State of California, the Director of the California Department of Corrections and Warden Runnels were dismissed as defendants by order filed on February 9, 2005, adopting the Findings and Recommendations filed on December 15, 2004.

up to be harmed; defendant Campbell began to save bitter and rotten apples to give plaintiff at evening meals and yelled on the building tier for all inmates to hear that no inmate liked plaintiff. Id. Defendant Campbell tried to have plaintiff stabbed by a southern Los Angeles gangmember by talking to the Mexican gangmember who hated blacks in the cell next to plaintiff's. Id. At this time all black inmates were escorted with their hands handcuffed behind their backs while Mexican inmates were not. Id.

On March 27, 2004, defendants Campbell and Morring had plaintiff moved from C-yard, 4 building to C-yard, 8 building, at which time Morring told plaintiff in front of Campbell that he was going to make sure that plaintiff ended up in administrative segregation (Ad Seg) and, once there, would see to it that plaintiff could not have canteen privileges. Id. On April 21, 2004, defendant Morring carried out his threat. Id., & attachment identified as 8 of 8.

On March 29, 2004, defendant Campbell came to the filthy transit orientation pod (8 building) to which he and defendant Morring had moved plaintiff where he had half a mattress and no cleaning supplies to clean human waste. FAC, (unnumbered), p. 3-A. Defendant Campbell said something to the staff of 8 building, while pointing to plaintiff; when Campbell came to his cell, plaintiff told him he had filed an inmate appeal against him, to which Campbell replied that he did not care. Id. Defendant Campbell had the 8 building staff work "in concert" with him to cause plaintiff harm by denying him much-needed cleaning supplies. Id.

On March 30, 2004, defendant Chacon lied to the law librarian and told her plaintiff refused to come to the law library when the librarian had sent him a priority pass due to a pending appeal plaintiff had before the state appellate court. Id. On April 2, 2004, defendant Chacon for the third time in seven days refused plaintiff cleaning supplies telling plaintiff that he should have stayed on the streets if he wanted the supplies. Id. Plaintiff called defendant Chacon "a corrupt fat M.F.," after which Chacon began to yell that plaintiff had threatened to stab him with a knife. Id. Defendant Barnard, Chacon's "partner" joined in and began to yell the lie that plaintiff had threatened Chacon with a knife, which led to plaintiff's being placed in Ad Seg hold

Case 2:04-cv-00983-LKK-GGH   Document 31   Filed 04/26/05   Page 4 of 13

on that day, April 2, 2004. Id. In 20 years of incarceration within the C.D.C., plaintiff has never either had a knife or threatened staff. Id. Plaintiff seeks money damages. FAC, p. 4.

Motion for Injunctive Relief

Plaintiff asks that a request for injunctive relief be incorporated within his complaint and also seeks a "restraining order" because he believes his life to be in danger. See plaintiff's motion for injunctive relief, filed on December 2, 2004. By order filed October 14, 2004, certain claims/defendants were dismissed from this action with leave granted for plaintiff to file an amended complaint. In that same order, plaintiff's duplicative and inadequately supported requests for preliminary injunctive relief, filed on May 20, 2004 and June 7, 2004, were vacated without prejudice to their renewal pending service of this action upon defendants. The court also informed plaintiff that should he become subject to an imminent threat of harm prior to service of any complaint, he could seek preliminary injunctive relief in a well-supported motion. See Order filed on October 14, 2004, p. 6. It was noted that plaintiff had failed to seek any form of injunctive relief within his complaint. Id., p. 5. Plaintiff, however, failed to file an amended complaint within the time set forth and belatedly seeks to have an unspecified request for injunctive relief incorporated within the pending first amended complaint,[3] which proceeds as modified by the order filed on February 9, 2005.

Plaintiff's motion was not, however, accompanied by a proposed second amended complaint. As a litigant proceeding in forma pauperis, plaintiff's pleadings are subject to evaluation by this court pursuant to the in forma pauperis statute. See 28 U.S.C. § 1915. Since plaintiff did not submit a proposed second amended complaint, the court is unable to evaluate it. At the very least, plaintiff should make clear the permanent injunctive relief which he seeks to be

---

[3] The court has deemed the pending action the first amended complaint, filed on January 25, 2005, not because plaintiff amended his allegations timely but because plaintiff added more exhibits to the initial complaint in the documents he returned for the court to order service. The court, therefore, deemed the additional exhibits to constitute plaintiff's first amended complaint pursuant to Fed. R. Civ. P. 15(a). See Order, filed on January 25, 2004, pp. 1-2.

1 incorporated within this action. Plaintiff's motion for his first amended complaint to be amended
2 to incorporate claims for permanent injunctive relief he does not identify must therefore be
3 denied.
4     In addition, plaintiff seeks a temporary restraining order, asking that the court
5 order that 1) plaintiff be transferred to another prison because his life is in danger; 2) defendants
6 not physically harm plaintiff in retaliation for his having filed this action; 3) defendants not lie or
7 set plaintiff up in violation of Cal. Penal Code § 134;[4] 4) defendants not steal or destroy
8 plaintiff's legal or personal property or his mail; 5) plaintiff be housed in a single cell to protect
9 him from any inmate who might be working with defendants to harm him; 6) plaintiff be
10 provided with a "legal runner" and funds to pay for one; 7) plaintiff be allowed to amend his
11 requests as needed. Motion, p. 7. Plaintiff sets forth the following allegations in support of his
12 request. Plaintiff claims that he informed defendant Morring as Morring was escorting plaintiff
13 to the law library on October 19, 2004, that he had filed a civil action naming Morring and that
14 Morring should have a "keep away" during the pendency of the action. Defendant Morring
15 indicated that he was unaware of the lawsuit. Defendant Morring later took plaintiff from the
16 correctional officer who was escorting plaintiff back from the library. Plaintiff showed defendant
17 Morring that his name appeared in a court order, after which Morring became verbally abusive,
18 hostile and loud, tightened his grip on plaintiff and made a comment that plaintiff believes gave
19 the false impression that plaintiff was refusing to return to his cell. Once plaintiff was in his cell,
20 he told defendant Morring that he should be served with a summons soon and Morring loudly
21 replied that the matter should be taken up with his attorney. Motion, pp. 1-2.
22 \\\\

---

[4] "§134. Preparing false documentary evidence

PREPARING FALSE EVIDENCE. Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

On the same day, plaintiff's cellmate, inmate Glen, who had been forced upon plaintiff some five days earlier, became verbally abusive to plaintiff for no reason. Inmate Glen was a documented Crip gangmember from the Los Angeles area, while plaintiff is not affiliated with any gang and is from the San Francisco Bay area. As a result of inmate Glen's severe verbal assault, plaintiff was compelled to ask that one of them be removed from the cell. Motion, p. 2.

When plaintiff informed non-defendant C/O Cook about the incompatibility problem, Cook indicated indifference. Plaintiff alleges that these events ensued very shortly after defendant Morring returned plaintiff to his cell. When plaintiff complained to non-defendant C/O Whittaker about the cellmate problem later, inmate Glenn was moved to another cell shortly thereafter. Whittaker then removed plaintiff from the cell and searched it in retaliation for plaintiff's complaint about inmate Glen. While the search was being conducted, plaintiff was seated and handcuffed. When he turned his head towards his cell, non-defendant C/O Dixson from the control booth, holding a loaded assault rifle at plaintiff's head, told him to turn back around. Whittaker took plaintiff back to his cell, yelling loudly that the Crips did not like plaintiff; a few minutes later, Whittaker, whom plaintiff had never seen before that day, showed plaintiff's prison I.D. photo to Crip gangmembers in the building, while repeating that Crips do not like plaintiff and would not want to be in a cell with his "cock eye ass anyway." Motion, pp. 2-4.

On October 20, 2004, non-defendant Cook began tampering with plaintiff's food and for about 30 days following plaintiff's encounter with defendant Morring would select the lunches that were missing coffee packs or condiments to give to plaintiff. On October 22, 2004, Cook had non-defendant C/O Look monitor a telephonic court call which had been ordered not to be either recorded or monitored. Exhibit 1- San Mateo County court order. Plaintiff informed the state court judge of a lack of compliance during that call and stated that defendants in that state court action, apparently an attorney malpractice complaint, had H.D.S.P. staff causing communication problems. Motion, pp. 4-5; exhibits.

1   C/O Cook threw plaintiff's October 22, 2004 inmate grievance against Cook,
2 C/O Look for harassing him and tampering with his food in the trash in front of plaintiff. Cook
3 bragged about trashing the appeal in front of non-defendants C/O Kellsy [sic] and CCI Williams,
4 stating that he was "the best corrupt cop at HDSP." On October 30, 2004, C/O Dixson harassed
5 plaintiff by turning off the shower when plaintiff had just stepped in and was trying to apply a
6 medicated shampoo which he had been prescribed for some 20 years. Motion, p. 5.

7   On October 31, 2004, plaintiff wrote a grievance about the conditions to which he
8 was being subjected and gave it to non-defendant C/O's Wojick and Nicks, which were all a
9 result of corrupt staff being acting in concert with defendant Morring. Plaintiff never received a
10 log number for the complaint. Motion, pp. 5-6.

11   On November 15, 2004, plaintiff refused to turn over his morning tray in order to
12 have a correctional lieutenant brought to him so he could tell what Cook, Look and Dixson were
13 doing. Plaintiff spoke with non-defendant C/Lt. P. Statti. On the morning of that day, Look
14 brought a documented northern California "415" gangmember to plaintiff's cell called "Bank-
15 roll," (whom plaintiff has since identified as inmate Wortin)[5] who informed plaintiff in front of
16 C/O Look that it was "open season" on him. Bank-roll/Wortin told plaintiff that he would have
17 something done to him if plaintiff did not roll up his property on the day that inmates came off
18 lock-down. C/O Look allowed inmate Wortin to walk around the whole section to relay his
19 threats to all building 1(a) inmates, encouraging them to attack plaintiff. Wortin told plaintiff's
20 present cellmate to attack plaintiff and plaintiff has received letters from other inmates
21 threatening to attack him. Motion, pp. 6-7.
22 Opposition

23   Defendants aver that plaintiff is currently housed in Ad Seg at HDSP, having been
24 placed there on December 9, 2004 at his own request. Opp., p. 3, Exh. A, Declaration of Corr.

25 ─────────────
26   [5] See Reply, p. 2. .

7

Lt. D. Peddicord (not a defendant), Z-facility (Ad-Seg. Unit) Supervisor, dated March 23, 2004. Plaintiff was fearful of being assaulted by other black inmates when released from lockdown because he had made disrespectful statements to them and to Hispanic inmates. Id., & Exh. B, Ad Seg Unit placement notice, dated 12/9/04. Plaintiff has a history of unruly behavior and of refusing to cell with other inmates, according to defendants, having previously been moved from one housing unit to another due to his having taunted gang-related inmates and having threatened violence to maintain his single cell status. Opp., p. 3, Exh. C, general chrono by defendant Armstrong dated 1/16/04, identifying plaintiff's verbal disputes with Crip gangmembers in Facility B; Exh. E, Rules Violation Report by defendant Morring for plaintiff's 4/21/04 refusal to accept a cellmate for which plaintiff was found guilty in a 5/4/04 disciplinary hearing before D. Peddicord. Plaintiff appeared before a classification committee on December 16, 2004 and was at that time placed on single cell status and assigned to a walk-alone yard. Opp., p. 3, Exh. A. Defendants contend that plaintiff recently had an informational chrono issued for disrespectful conduct toward staff, for grabbing his genitals and shouting obscenities. Opp., p. 3, Exh. D, general chrono by non-defendant C/O Micone for shouted obscenities to him and an informational chrono of the same 3/29/04 incident by non-defendant C/O Nichols.

Reply

In reply, plaintiff alleges that defendants have repeatedly changed plaintiff's statements, have lied and have otherwise shown bias and prejudice. Reply, pp. 1-2. At a classification hearing on February 3, 2005, plaintiff told non-defendant Assoc. Warden Armoskus that defendant Look created the most serious safety issue on November 15, 2004 when he escorted inmate Wortin to plaintiff's cell, allowing that inmate to threaten him (as set forth previously). Id., p. 2. Corr. Lt. Peddicord witnessed plaintiff's discussion with Armoskus. Id. Assoc. Warden Armoskus sent two correctional staff members to interview plaintiff on his allegations on February 10, 2005. Reply, p. 3. Plaintiff had earlier made the same statements on December 9 & 10, 2004 to other (non-defendant) correctional staff. Reply, p. 3. Plaintiff

confirms that he has been on single cell status since December 10, 2004, due to a Corr. Capt. Beckman, but alleges that on December 9, 2004, Corr. Sgts. Harnden and Gamberg lied in a CDC 114 D lock up order, when they said that he told them he had made disrespectful statements against black and Northern Hispanic inmates on the tier. Reply, p. 3. Plaintiff is willing to take a polygraph in support of his position and claims that the sergeants concocted this version of events after speaking briefly with defendant Look following their interview with plaintiff. Reply, pp. 3-4. Plaintiff re-affirms his allegation that until defendant Morring's October 19, 2004 involvement (set forth above), plaintiff had only very minor problems from Building 1 staff. Reply, p. 4. Plaintiff also alleges that defendant Nuchols made some type of hand claw sign, a symbol used by the prison staff gang known as the "Green Wall," during plaintiff's first disciplinary hearing at HDSP, after which plaintiff's comments were ignored. Reply, p. 5. Plaintiff believes that defendants Nuchols, Morring, Campbell, Barnard, Armstrong, and Von Rader are members of this so-called Green Wall, as well as a number of non-defendants including, inter alia, Peddicord, Harnden, Gamberg, Cook, Look, Whittaker and Nichols. Reply, p. 5.

Plaintiff then seeks to justify the chrono for his having grabbed his genitals for non-defendant C/O Laguna "to get a good look." Reply, p. 6. He avers that he had been taken on a 300-mile, six-hour round trip from HDSP to Mt. Shasta with no drink of water and was subjected to a no clothing body search in a holding cage in front of a female correctional officer who "never took her eyes off [his] penis." Id. Plaintiff then goes on to allege that certain non-defendants instituted a retaliatory search of his cell. Id. Plaintiff denies that he has a history of having refused cellmates, and that he had a cellmate named Burns prior to being placed in Ad Seg and that he only refused to be placed in a cell with a known gangmember. Reply, p. 7. He further contends that HDSP staff have the violent gangmembers on the "pay-role" [sic]. Id.

\\\\\

\\\\\

1  Temporary Restraining Order/Preliminary Injunctive Relief
2  TRO
3         The purpose in issuing a temporary restraining order is to preserve the status quo
4  pending a fuller hearing.  The cases contain limited discussion of the standards for issuing a
5  temporary restraining order due to the fact that very few such orders can be appealed prior to the
6  hearing on a preliminary injunction.  It is apparent, however, that requests for temporary
7  restraining orders which are not ex parte and without notice are governed by the same general
8  standards that govern the issuance of a preliminary injunction.  See New Motor Vehicle Bd. v.
9  Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch.
10 Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting);
11 Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the
12 emphasis of the court is directed to irreparable harm and the balance of hardships because the
13 merits of a controversy are often difficult to ascertain and adjudicate on short notice.
14 Preliminary Injunction Standard
15        The legal principles applicable to a request for injunctive relief are well established.
16 To prevail, the moving party must show either a likelihood of success on the merits and the
17 possibility of irreparable injury, or that serious questions are raised and the balance of hardships
18 tips sharply in the movant's favor.  See Coalition for Economic Equity v. Wilson, 122 F.3d 692,
19 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th
20 Cir. 1985).  The two formulations represent two points on a sliding scale with the focal point
21 being the degree of irreparable injury shown.  Oakland Tribune, 762 F.2d at 1376.  "Under any
22 formulation of the test, plaintiff must demonstrate that there exists a significant threat of
23 irreparable injury."  Id.  In the absence of a significant showing of possible irreparable harm, the
24 court need not reach the issue of likelihood of success on the merits.  Id.
25        In cases brought by prisoners involving conditions of confinement, any
26 preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the

1 harm the court finds requires preliminary relief, and be the least intrusive means necessary to
2 correct the harm." 18 U.S.C. § 3626(a)(2).

3 <u>Discussion</u>

4       Plaintiff's allegations of a conspiracy involving defendants, non-defendants and
5 prison gangmembers are not sufficiently supported by the exhibits he himself has set forth. He
6 claims to have a 20-year history of not being a difficult inmate but he does not deny, for example,
7 having yelled, for no apparent reason, at non-defendant C/O Micone, "you have a sexy mouth
8 and I am going to fuck you in your sexy mouth" or to another non-defendant, C/O Nichols, "I
9 will fuck you and your sexy partner in the ass." Opp., Exh. D. In fact, plaintiff himself includes
10 as Exhibit 3 to his reply a copy of a Rules Violation Report for events on March 15, 2005, which
11 describes very offensive conduct on his part, including inexplicable agitation and shouted
12 obscenities to transportation officers as plaintiff was waiting to see a doctor in Mt. Shasta,
13 behavior that remains unexplained or denied in his reply. Nor does plaintiff submit any evidence
14 to substantiate the threats he states that he has received.

15       The primary difficulty for plaintiff, however, in attempting to meet his burden to
16 show that he is subject to irreparable harm absent preliminary injunctive relief is that he cannot
17 demonstrate in his current single cell housing and walk-alone status that he is subject to harm
18 from the gangmembers that he believes are primed to attack him. Speculative injury does not
19 constitute irreparable harm. <u>See</u> <u>Caribbean Marine Servs. Co. v. Baldrige</u>, 844 F.2d 668, 674
20 (9th Cir. 1988); <u>Goldie's Bookstore, Inc. v. Superior Court</u>, 739 F.2d 466, 472 (9th Cir. 1984). A
21 presently existing actual threat must be shown, although the injury need not be certain to occur.
22 <u>See</u> <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 130-31 (1969); <u>FDIC v.</u>
23 <u>Garner</u>, 125 F.3d 1272, 1279-80 (9th Cir. 1997), <u>cert.</u> <u>denied</u>, 523 U.S. 1020 (1998); <u>Caribbean</u>
24 <u>Marine Servs. Co.</u>, 844 F.2d at 674. For that matter, he has provided no evidence of the
25 conspiracy he alleges. If anything, whether because he taunted inmate gangmembers as
26 defendants claim plaintiff admitted that he had done or not, plaintiff has been kept by prison

officials from those inmates who may pose a threat to him since December 9 or 10, 2004, according to all parties.

Plaintiff is mistaken if he believes that the court will take over supervision of his prison life on a day-to-day basis, and that every slight, perceived or real, will be the subject of court scrutiny and evidentiary hearings. Moreover, the requirement to exhaust administrative remedies, see Booth v. Churner, 532 U.S. 731, 739-41, 121 S. Ct. 1819 (2001), will not be avoided simply because plaintiff has determined to append supplemental problems to an ongoing litigation.

On the other hand, defendants are wrong to assume that this court is powerless to take steps for plaintiff's protection should it become necessary because he becomes subject to demonstrably imminent harm at HDSP, whether or not plaintiff has named the specific individual who poses the threat as a defendant in this action. See All Writs Act, 28 U.S.C § 1651.

Plaintiff's allegations in support of his claims for immediate injunctive relief while extensive are insufficiently supported. Having found that plaintiff has not made a significant showing of possible irreparable harm, the court need not reach the issue of likelihood of success on the merits. Oakland Tribune, supra, 762 F.2d at 1376.

Requests for Access to Legal Materials

Plaintiff alleges that since he has been placed in Ad Seg, he has not had access to his legal materials. He must seek relief with respect to legal materials related to cases other than the instant action in those courts wherein those cases proceed. As to this action, plaintiff was able to file a timely reply to defendants' opposition to his motion for preliminary injunctive relief, which included exhibits, and did so subsequent to the requests for access he has filed. Plaintiff has made an insufficient showing that he needs a protective order from this court requiring access to his legal materials at this time.

\\\\\

\\\\\

Accordingly, IT IS ORDERED that:

1. Plaintiff's January 3, 2005 and duplicative January 6, 2005 requests for access to his legal materials are denied without prejudice; and

2. Plaintiff's December 2, 2004 motion to have unspecified claims for injunctive relief incorporated within his first amended complaint is denied without prejudice.

Accordingly, IT IS RECOMMENDED that plaintiff's December 2, 2005 motion for preliminary injunctive relief be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v.Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 4/26/05

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
jack0983.inj