IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULIUS LEE JACKSON,

        Plaintiff,                No. CIV S-04-0983 LKK GGH P

    vs.

STATE OF CALIFORNIA, et al.,

        Defendants.         FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment, filed on May 26, 2006.  Defendant filed an opposition, on June 12, 2006, after which defendants filed a reply on June 21, 2006.  Plaintiff filed a duplicate of his opposition on June 30, 2006, accompanied by an affidavit (of one page) which did not accompany his original opposition.  Because it is duplicative as well as belated, the court disregards the second filing of his opposition, but will consider the belated affidavit.

\\\\\

\\\\\

\\\\\

1

First Amended Complaint

The court sets forth the allegations of plaintiff's first amended complaint in its Findings and Recommendations, filed on April 26, 2005.[1] The allegations are modified herein to reflect the fact that, pursuant to an Order filed on March 13, 2006, adopting the Findings and Recommendations, filed on July 1, 2005, defendant Campbell has subsequently been dismissed.[2]

Plaintiff, an inmate at High Desert State Prison (HDSP), proceeds on a first amended complaint against eight defendants: Sgt. Nuchols, Sgt. Brewer, Correctional Officer (C/O) Von Rader, Medical Technical (or Medically Trained) Assistant (MTA) Bates, C/O Armstrong, C/O Morring, C/O Chacon and C/O Barnard.[3]

On December 19, 2003, defendants Nuchols and Brewer grabbed plaintiff's arms while he was handcuffed behind his back and slammed him face first into a wall and then onto the floor, after which they lay their full body weight on top of him. First Amended Complaint (FAC), p. 3. Thereafter, defendant Nuchols began jabbing plaintiff's left ear with his fingers "as hard as he could, drawing blood," as defendant Brewer tore off plaintiff's boots and socks. Id. Then defendants Nuchols, Brewer and Von Rader grabbed plaintiff, who now had on leg shackles, from the floor with force and slammed him into a wire cage. Id. Defendant Bates then refused plaintiff medical attention. Id.

Some two and a half hours later, plaintiff was returned to his cell; defendant Armstrong had removed all of plaintiff's personal property, including his medications, refusing

---

[1] Judge Karlton adopted the disposition of the Findings and Recommendations, recommending denial of preliminary injunctive relief, on grounds of mootness, rather than on legal determinations made by the undersigned. See Order, filed on August 22, 2005.

[2] In response to a show cause order why defendant should not be dismissed under Fed. R. Civ. P. 4(m), plaintiff requested dismissal of defendant Campbell. See Findings and Recommendations, filed on July 1, 2005.

[3] The State of California, the Director of the California Department of Corrections and Warden Runnels were dismissed as defendants by Order, filed on February 9, 2005, adopting the Findings and Recommendations filed on December 15, 2004.

1    to give back to plaintiff his back and neck medications for 30 hours, causing plaintiff to suffer.

2    FAC, p.4.

3            On January 16, 2004, defendant Armstrong informed plaintiff that defendants

4    Nuchols and Brewer wanted to see him, after which he was taken from his cell to which he was

5    never returned.  Id.  Instead, defendants Nuchols, Brewer, Von Rader and Bates moved plaintiff

6    in retaliation for his having filed an inmate appeal against them for their actions on December 19,

7    2003.  Id.  Also on January 16, 2004, defendant Morring (and former defendant Campbell)

8    conspired to set plaintiff up to be harmed.[4]  At this time all black inmates were escorted with

9    their hands handcuffed behind their backs while Mexican inmates were not.  Id.  On March 27,

10   2004, defendant Morring had plaintiff moved from C-yard, 4 building, to C-yard, 8 building, at

11   which time Morring told plaintiff in front of former defendant Campbell that he was going to

12   make sure that plaintiff ended up in administrative segregation (Ad Seg) and, once there, would

13   see to it that plaintiff could not have canteen privileges.  Id.  On April 21, 2004, defendant

14   Morring carried out his threat.  Id., & attachment at p. 14.

15           On March 30, 2004, defendant Chacon lied to the law librarian and told her

16   plaintiff refused to come to the law library when the librarian had sent him a priority pass due to

17   a pending appeal plaintiff had before the state appellate court.  FAC, p.4.  On April 2, 2004,

18   defendant Chacon for the third time in seven days refused plaintiff cleaning supplies telling

19   plaintiff that he should have stayed on the streets if he wanted the supplies.  Id.  Plaintiff called

20   defendant Chacon "a corrupt fat M.F.," after which Chacon began to yell that plaintiff had

21   threatened to stab him with a knife.  Id.  Defendant Barnard, Chacon's "partner" joined in and

22   began to yell the lie that plaintiff had threatened Chacon with a knife, which led to plaintiff's

23   being placed in Ad Seg hold on that day, April 2, 2004.  Id.  In 20 years of incarceration within

24

25           [4] Plaintiff alleged that former defendant Campbell tried to have plaintiff stabbed by
     talking to a southern Los Angeles gangmember who hated blacks and also claimed that this
     individual worked to have staff in building 8, when plaintiff was moved to a filthy pod there,
26   denying him needed cleaning supplies.

                                                   3

1   the C.D.C., plaintiff has never either had a knife or threatened staff.  Id.  Plaintiff seeks money

2   damages.  FAC, p. 4.

3   Motion for Summary Judgment

4         Defendants move for summary judgment on the ground that his allegations of

5   conspiracy are insufficient; only enough force as necessary was used to control him as he

6   attempted to break free from his escort; plaintiff's claims that he has been subjected to false

7   disciplinary charges are barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994);

8   plaintiff does not have a constitutional right to choose his cell or cellmate; plaintiff has failed to

9   demonstrate that he suffered more than a de minimis injury; defendants are entitled to qualified

10  immunity.  Motion for Summary Judgment (MSJ), pp. 1-14.

11  Legal Standard for Summary Judgment

12        Summary judgment is appropriate when it is demonstrated that the standard set

13  forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

14  there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

15  as a matter of law."  Fed. R. Civ. P. 56(c).

16        Under summary judgment practice, the moving party

17

18      always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the
    pleadings, depositions, answers to interrogatories, and admissions

19  on file, together with the affidavits, if any," which it believes
    demonstrate the absence of a genuine issue of material fact.

20

21  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

22  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

23  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

24  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

25  after adequate time for discovery and upon motion, against a party who fails to make a showing

26  sufficient to establish the existence of an element essential to that party's case, and on which that

4

1  party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

2  failure of proof concerning an essential element of the nonmoving party's case necessarily

3  renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

4  granted, "so long as whatever is before the district court demonstrates that the standard for entry

5  of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

6          If the moving party meets its initial responsibility, the burden then shifts to the

7  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

8  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

9  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

10  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

11  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

12  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

13  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

14  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

15  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

16  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

17  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

18  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

19          In the endeavor to establish the existence of a factual dispute, the opposing party

20  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

23  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

24  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

25  56(e) advisory committee's note on 1963 amendments).

26  \\\\\

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

On January 25, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

Undisputed Facts

A number of facts are undisputed. The broader undisputed facts are included here. As to the specific claims against individual defendants, the undisputed facts most pertinent to those claims are set forth in the appropriate section.

Plaintiff testified that, since 1984, he has been in approximately a thousand (1,000) physical or mutual combat altercations with other prisoners. Plaintiff's Deposition (Pl.'s Dep.) 63:11-18; 71: 16-22; 101:7-9; 108:3-6. Plaintiff, in his deposition, also stated that he had attacked several inmates with weapons. Pl.'s Dep. 101:7-13. Plaintiff arrived at High Desert State Prison (HDSP) on July 30, 2003. Defendants' Undisputed Fact (DUF) No. 2: Defendants'

Exhibit (Defs. Exh.) A, plaintiff's chronological history. At all times relevant to this action, defendants Brewer and Nuchols were correctional sergeants at HDSP. DUF No. 3: Defs. Exh. D, Nuchols declaration (Dec.) ,¶ 1 & Exh. E, Brewer Dec., ¶ 1. At all times relevant to this action, defendants Von Rader, Morring, Chacon, Barnard, and Armstrong were correctional officers at HDSP. DUF No. 4: Exh. F, Von Rader, Dec., ¶ 1; Exh. G, Morring Dec., ¶ 1; Exh. H, Chacon Dec., ¶ 1; Exh. I, Barnard Dec., ¶ 1; Exh. L.[5] At all times relevant to this action, defendant Bates was a medical technical assistant (MTA) at HDSP. DUF No. 5; Exh. K, Records pertaining to incident of Dec. 19, 2003, pp. 6, 9.

On March 15, 2004, plaintiff suddenly became agitated and shouted obscenities at officers. He told Officer Hudson (not a defendant): "I raped and fucked your mother." DUF No. 34; Exh. M. On March 29, 2004, plaintiff approached non-defendant Officer Ly and claimed that Officer Campbell (a former defendant) tried to rape "his woman." DUF No. 35; Exh. N, Micone information chrono, p. 3. Also, on March 29, 2004, plaintiff started yelling, for no apparent reason, at non-defendant Officer Micone: "You have a sexy mouth and I am going to fuck you in your sexy mouth," and to Officer Nichols, also not a defendant: "I will fuck you and your sexy mouth partner in the ass." DUF No. 36; Exh. N, pp. 1-2.

On December 9, 2004, plaintiff was placed in Ad Seg at HDSP at his own request. Plaintiff was fearful of being assaulted by other black inmates when released from lockdown because he had made disrespectful statements to them and Hispanic inmates. DUF No. 52: Exh. J; see also, plaintiff's FAC, p. 19.[6]

---

[5] Although defendant Armstrong's declaration is not included, Defs. Exh. L is a copy of a general chrono signed by defendant Armstrong on 1/16/04, identifying him as a correctional officer at HDSP; nor, as plaintiff names him as a correctional officer defendant, does plaintiff dispute the fact.

[6] Somewhat confusingly, however, plaintiff states in his deposition that while he showed a Sgt. Ganberg, not a defendant, a handwritten note indicating that inmates were threatening him, he did not fear for his safety, as he believed that this non-defendant had paid an inmate to give plaintiff the threatening note. Plt.'s. Dep. 58:11-25.

Defendants Nuchols, Brewer and Von Rader - Excessive Force

>*Undisputed Facts*

On December 19, 2003, plaintiff was upset because he believed he was being denied access to the prison law library.  DUF No. 6: Pl.'s. Dep. 12:3-20; 13:6-14; 16:14-15; 21: 4-8; Exh. D ¶ 3; Exh. E ¶ 3; Exh. K.  The court notes here, however, that while defendants maintain this is only a perception of plaintiff's, impliedly mistaken, plaintiff is adamant that when he complained to defendants Brewer and Nuchols, he was denied law library access point blank.  Pl.'s. Dep. 17: 2-24.  As he discussed this issue with defendants Brewer and Nuchols, plaintiff became disruptive.  He began to shout and use obscenities.  DUF No. 7: Pl's. Dep. 21-23;[7] Exh. D ¶ 3; Exh. E ¶ 3; Exh. K.  Due to his disruptive behavior, Brewer and Nuchols escorted plaintiff to the program office for an interview.  DUF No. 8: Exh. D ¶ 4; Exh. E ¶ 4; Exh. K.  While in the program office, Nuchols and Brewer spoke to plaintiff for five to ten minutes.  DUF No. 9:  Id.; Pl.'s. Dep. 16:25.  Plaintiff refused to be counseled by defendants Nuchols and Brewer.  Pl.'s. Dep. 16:9-25.  Plaintiff refused to calm down.  Pl's. Dep. 23:19-22; Exh. D ¶ 4; Exh. E ¶ 4; Exh. K.  After making several attempts to counsel plaintiff, defendants Brewer and Nuchols decided to place plaintiff in a holding cell to provide him with the opportunity to calm down.  DUF No. 12: Exh. D ¶ 5; Exh. E ¶ 5; Exh. K.  From this point, plaintiff adamantly disputes defendants Nuchols' and Brewer's version of events beginning with their declaration that, as he was lifted from his chair by these defendants, hands cuffed behind his back, he offered resistance.  Exh. D ¶ 6; Exh. ¶ 6; Pl.'s Dep. 13:22-23; 14:2-5, 13-14, 20-22; 14:4-6; 18:7-23; 24:3-8; 28:12-25; 29-32.

There are, however, additional facts which are undisputed.  Defendant Von Rader, responding to defendant Brewer's radio call for assistance, entered the program office, observed plaintiff being restrained on the floor by defendants Nuchols and Brewer.  DUF No. 17: Exh. F ¶

_____

[7]  The court's review finds that although plaintiff's testimony at his deposition is somewhat equivocal on this point, he does not substantially dispute the point.

3, Exh. K.  Defendants Brewer and Nuchols did not strike plaintiff with any blows.  DUF No. 19: Exh. D ¶ 10; Exh. E ¶ 10; Exh. K.  Defendant Von Rader entered the office and became involved in placing plaintiff in a holding cage.  Pl.'s Dep., 32-34; Exh. D ¶ 8; Exh. E ¶ 8; Exh. F ¶¶ 3, 5; Exh. K.  Plaintiff has experienced back pain for approximately 20 years; at all times relevant to this action, he was taking Tylenol for these symptoms.  DUF No. 24: Pl.'s. Dep. 35:12-24; 36:7-9.  Although defendants do not set the information forth as an undisputed fact, their own exhibit affirms that plaintiff was in handcuffs at the time of the incident at issue and was placed in leg shackles as he lay prone on the floor before he was placed in the holding cage.  Exh. K, pp. 1, 5-6, 8, 13, 16.

### *Disputed Facts*

Plaintiff's version of the events that constitute his excessive force claim differ dramatically from those attested to by defendants Nuchols, Brewer and Von Rader.  Defendants maintain that as plaintiff was being escorted out of the office, he suddenly pulled his arm out of defendant Nuchols' grasp.  DUF No. 13: Def's. Exh. D ¶ 6; Exh. E ¶ 6; Exh. K.  According to defendants Nuchols and Brewer, they believed that plaintiff was attempting to break away from his escort.  DUF No. 14: Exh. D ¶ 6; Exh. E ¶ 6; Exh. K.  Defendants declare that defendant Brewer ordered plaintiff to get down on the ground and that when he failed to comply with the order, they forced plaintiff onto his stomach.  DUF No. 15: Exh. D ¶ 6; Exh. E ¶ 6; Exh. K.  Because plaintiff continued to resist, according to defendants Nuchols and Brewer, by thrashing his legs, defendant Nuchols held plaintiff's chest to the floor by placing his right forearm across plaintiff's shoulders, and defendant Brewer held plaintiff's legs with his hands.  DUF No. 16: Exh. D ¶ 6; Exh. E ¶ 6; Exh. K.  Defendants maintain that plaintiff was then helped to his feet and escorted to a holding cell without incident and that defendants Nuchols and Brewer used only as much force as was necessary to contain and subdue plaintiff after he attempted to break away from his escort.  DUF Nos. 18, 20: Exhs. D ¶ 8; E ¶ 8;  F ¶ 3, ¶ 5; K.  Defendant Von Rader observed plaintiff being restrained on the floor by defendants Nuchols and Brewer with only

1    enough force to keep plaintiff prone.  Exh. F ¶ 4.  Defendant Von Rader declares that he did not

2    use any force in escorting plaintiff to a holding cell and observed no injuries to plaintiff.  Exh. F

3    ¶¶ 5-7.

4              In stark counterpoint, plaintiff re-affirms the allegations of his first amended

5    complaint, both in his opposition,[8] and, rather graphically, in his deposition testimony (in

6    portions of which are largely not referenced by defendants):

7              They had me put in handcuffs by another unknown staff member.
               Brought into their program office and commenced to attacking me
8              while I was handcuffed behind my back.

9    Pl.'s Dep. 14:2-5.

10             When they attempted to take me out of the chair they grabbed me
               by my right bicep, only taking me out of the room exactly similar
11             to this.  Tried to hit my face into the iron wall right there that's
               separating the glass to the door jam.  Tried to slam my face in there
12             as hard as possible.

13             Once they done that they slammed me face first to the ground.
               Both dove on my back.  Knuckles[9] [sic] on my top of my torso
14             towards my head.  Brewer on my legs.  Nuchols started stabbing
               me with his hands pointing in a four-finger pressure type of move.
15             Stabbing me in my ear forcing blood out.

16             While Brewer forcefully ripped off my boots and socks.  Had me
               placed in shackles.  Once they realized I wasn't dead, the other
17             staff wasn't going along with their murder plot, they eventually got
               off of me.

18   Id., 18:7-23

19             Q. .... So right before you were about to leave you were sitting
               down with your hands cuffed behind your back, correct?
20

21             A. Yes.

22
     ─────────────────────────
23        [8]  While his opposition largely reiterates and re-affirms the allegations of his first
     amended complaint, his declaration in support of his opposition supports his claims only very
24   broadly.

25        [9]  The deposition transcript misspells defendant Nuchols' name throughout.  To reduce
     confusion, the court will take the liberty of spelling it correctly when it appears following this
26   first quoted example.

1    Q.  It was at this time Nuchols first grabbed your right arm?

2    A.  No.  He grabbed me while I was sitting down.

3    Q.  In an effort to help you get out of the chair?

4    A.  No.  Not in an effort to help me get out of the chair.  In an
     effort to slam me face first into a wall.

5    Q.  He first grabbed your arm as you were about to get out of the
6    chair then?

7    A.  He grabbed my chair, snatched me up.  Grabbed my arm.
     Snatched me up out of the chair and slammed me face first into a
8    wall.  And then he grabbed me and slammed me face first to the
     pavement as hard as possible.

9

10   Id., 28:8-25.

11   Q.  Nobody ordered you to get down before force was applied?

12   A.  You mean nobody ordered me to get down, no.

13   Q.  They just immediately came after you?

14   A.  Just grabbed me and spin me up out of the chair.  Slammed me
     face first into the wall right there.  Or tried to smash me as hard as
15   possible to that wall then execute a perfect body slam face first to
     the floor.

16

17   Q.  Did you resist?

     A.  I resisted not dying.  Yes.  I resisted for them to stop killing me.
18   Yes, I kept breathing.

19   Q.  Did you fight back in any way?

20   A.  Yes.  I breath [sic] air.  Yes, I did fight back by breaking [sic]
     air.

21

22   Id., 30:11-25.

     Q.  Sir, were you kicking your legs?
23
     A.  No.
24
     Q.  No resistance whatsoever - -
25
     A.  No.
26

11

Q. And they continued to attack you?

A. Yes.  Until they thought I was dead.  Another staff member wouldn't go along with the murder plot.  I had to lay face first - - I had to lay on the ground and stop breathing and act like I was dead.

Q. You actually had to play dead?

A. I had to play dead.  Tongue sticking out and everything for them to stop.

Q. ....  Did they actually ask the other officers for their help in killing you?

A. No.  One officer - - unknown officer said what are you going to do, kill him.  An unknown officer said are you going to kill him.  And that's when they backed up when they thought I was dead.

Id., 31:19-25; 32:17, 10-15.

As to defendant Von Rader, whom no party contends had any involvement with the incident at issue until plaintiff was lying on the floor and was in the process of being placed in a holding cell, plaintiff continues to assert that he was grabbed by Von Rader, forcefully dragged across the floor, slammed face first into a wire cage and locked up.  Opp., p. 1.  Already handcuffed, he was placed in leg shackles before being allegedly dragged to the wire cage and locked in for several hours, his boots and socks having been "forcefully ripped off" by defendant Brewer, on a freezing cold floor.  Opp., pp. 1-2.

Plaintiff in his deposition testimony averred that it was only defendant Von Rader who dragged him across the floor, slammed him into the wire cage face first, and locked him in, although defendants Brewer and Nuchols helped to grab plaintiff up off the ground before he was dragged.  Pl's. Dep. 32-33.

Plaintiff was found guilty of willfully resisting a peace officer for this incident in a prison disciplinary hearing, to which he had pleaded not guilty, protesting that he had not resisted but had been subjected to "abusive force," and for which he was counseled and reprimanded but not assessed any loss of credits.  Def's. Exh. K, pp. 18-20.

\\\\\

1    On the evidence of the parties, it is plain that the circumstances surrounding

2    plaintiff's excessive force claim constitute material facts which are in dispute, as plaintiff's

3    evidence in opposition is to be believed.  See Anderson, supra, 477 U.S. at 255, 106 S. Ct. at

4    2513.  All reasonable inferences that may be drawn from the facts placed before the court must

5    be drawn in favor of the opposing party.  See Matsushita, supra, 475 U.S. at 587, 106 S. Ct. at

6    1356.

7                    *Qualified Immunity*

8            Defendants Nuchols, Brewer and Von Rader contend that they are entitled to

9    qualified immunity.  MSJ, pp. 12-13.  The threshold inquiry in a qualified immunity analysis is

10   whether a state official violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201, 121 S.

11   Ct. 2151 (2001).  If he officially violated a constitutional right, the court conducts the following

12   two-part inquiry to determine if they are entitled to qualified immunity:  1) was the law

13   governing the state official's conduct clearly established; and 2) under that law could a

14   reasonable state official have believed his conduct was lawful?  Estate of Ford v. Ramirez-

15   Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).

16           In the first step, the court views the record in the light most favorable to the party

17   asserting injury to determine whether the officer's conduct violated a constitutional right.

18   Saucier v. Katz, 533 U.S. at 201, 121 S. Ct. at 2156.  If the plaintiff establishes the violation of a

19   constitutional right, the court next considers whether that right was clearly established at the time

20   the alleged violation occurred.  Id.  The contours of the right must have been clear enough that a

21   reasonable officer would have understood that what he was doing violated that right.  See

22   Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).

23           The court first considers whether defendants' conduct violated a constitutional

24   right.  "[W]henever prison officials stand accused of using excessive physical force in violation

25   of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

26   faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

1   Hudson v. McMillian, 503 U.S. 1, 6-7,112 S. Ct. 995, 999 (1992).  When determining whether

2   the force was excessive, we look to the "extent of the injury..., the need for application of force,

3   the relationship between that need and the amount of force used, the threat 'reasonably perceived

4   by the responsible officials,' and 'any efforts made to temper the severity of a forceful

5   response.'" Id., at 7.

6           Plaintiff alleges that he had been suffering back pain for many years and that the

7   incident re-injured his back, causing him severe pain.  Granting this factor as balancing on the

8   side of plaintiff for the purposes of the claims of excessive force,[10] the court must assess the need

9   for the application of force.  All parties agree that plaintiff is no stranger to altercations and he

10  expressly admits that he has gotten into frequent fights with other inmates.  He also does not

11  dispute that his behavior was disruptive when he was being denied, or believed he was being

12  denied, access to the law library.  There is ample evidence to support the assertion that plaintiff

13  was spewing verbal venom at defendants Nuchols and Brewer.

14          However, the material dispute that remains is as to the actual force used and the

15  necessity of that force in the incident at issue.  As noted, this court finds that plaintiff has

16  adequately demonstrated by, inter alia, his sworn deposition testimony that there is a genuine

17  issue of material fact in dispute as to what occurred when efforts were made to subdue him, or

18  perhaps simply, to shut him up.  The question for this court is whether defendants overreacted or

19  reacted with excessive force in their conduct toward plaintiff.

20  \\\\\

21

22          [10]  In any event, as noted in Hudson, supra, at 9, 112 S. Ct. at 1000, citing Whitley v.
    Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 1088 (1986): "[w]hen prison officials maliciously
23  and sadistically use force to cause harm contemporary standards of decency are violated.  See
    Whitley, supra [].  This is true whether or not significant injury is evident."  See also, Olivar v.
24  Keller, 289 F.3d 623, 628 (9th Cir. 2002), noting Justice Blackman's concurring opinion in
    Hudson, supra, at 17, 112 S. Ct. at 1004, with regard to excessive force claims: "I have no doubt
25  that to read a 'physical pain' or 'physical injury' requirement into the Eighth Amendment would
    be no less pernicious and without foundation than the "significant injury" requirement we reject
26  today."

1    Plaintiff claims that the only physical resistance he offered came as he flinched

2    away from defendant Nuchols' hard grasp.  Plt's. Dep., 29: 18-25, 30: 1-6.  Given that plaintiff

3    had been seated and was cuffed behind his back (not in dispute), if plaintiff's version of events

4    are accurate, no matter how provoking his comments may have been, there can be little

5    justification on the face of it, for his having been grabbed up and slammed against a wall, then

6    slammed roughly to the floor, his left ear jabbed until blood was drawn, to the point where he felt

7    he had to play dead in order to escape any further attack.  As to defendant Von Rader, similarly,

8    although possibly less egregiously, dragging a leg-shackled and hand-cuffed inmate across a floor

9    and slamming him into a holding cell would also in this context constitute force in excess of

10   what is reasonable.  Therefore, the court finds that the actions of these defendants violated

11   plaintiff's constitutional right to be free from excessive force.

12   Under Hudson v. McMillian, supra, 503 U.S. at 6-7,112 S. Ct. at 999, there can be

13   little doubt that plaintiff's constitutional right to be free from unreasonable or excessive force

14   was clearly established and that the "contours of the right [were] sufficiently clear that a

15   reasonable official would understand that what he is doing violates that right."  Saucier v. Katz,

16   533 U.S. at 202, 121 S. Ct. at 2156.  Thus, the first prong of the two-part inquiry, following the

17   finding that a constitutional right has been violated by defendants Nuchols, Brewer and Von

18   Rader, that the law governing defendants' actions at the time they occurred, is met.  As to the

19   second part, whether a reasonable officer could have believed that the conduct attributed by

20   plaintiff to these defendants was lawful, as set forth, the alleged actions of the defendants were

21   not those that a reasonable officer in the circumstances could have believed were lawful.  The

22   court finds that these defendants are not entitled to qualified immunity on plaintiff's claims of

23   excessive force and, as to plaintiff's claims of a violation of his rights under the Eighth

24   Amendment for slamming him, hand-cuffed, against a wall and to the floor and then placing their

25   weight on him, defendants Nuchols and Brewer motion for summary judgment should be denied.

26   Similarly, defendant Von Rader's motion for summary judgment as to plaintiff's claims against

1  defendant Von Rader for allegedly dragging him, hand-cuffed and leg-shackled, across a floor

2  and slamming him into a holding cell should be denied.

3          While the undersigned has considerable doubt about plaintiff's veracity, given his

4  documented previous violent behavior, and prisoners like plaintiff make managing a prison

5  difficult at best, our legal system does not permit preliminary hearings to test the facts short of

6  trial.

7  Defendants Bates - Inadequate Medical Care

8          *Undisputed Facts*

9          As to defendant Bates, the only fact that is undisputed is that there is a copy of a

10  document, a "medical report of injury," wherein MTA Bates states that he observed no injuries

11  on plaintiff on December 19, 2003, following the incident set forth immediately above, also

12  containing a notation that plaintiff refused to answer questions.  Def's Exh. K, p. 9.

13          *Disputed Facts*

14          Defendants contend that it is an undisputed fact (No. 22) that while inside the

15  holding cell, plaintiff was medically cleared by defendant MTA Bates and that plaintiff refused to

16  answer any of Bates' questions, merely responding, "I'm God. Check my C-file."  They also

17  assert that on visual inspection of plaintiff, plaintiff Bates did not observe any injuries.  Def's.

18  Exh. K pp. 6, 9.  Defendants also assert as an undisputed fact (No. 23) that plaintiff was not

19  injured on December 19, 2003.[11]  Def's Exh. D ¶ 9; Exh. E ¶ 9; Exh. K p. 6, 9.

20          On the other hand, plaintiff has consistently maintained he sought medical care

21  but that defendant Bates refused to provide any; he insists that he sought medical care but that

22  defendant Bates did not come to see him, notwithstanding the medical report.  Plt's. Dep.: 34:10-

23  14, 36:24-25; 45:16-25, 46: 1-16; Opp., p. 2.  He claims that his back was re-injured and that he

24  was  bleeding from the left ear.  Plt's Dep., 35: 8-24; 38-40.  He also makes reference to

25

26          [11]  Defendants actually note the date as December 19, 2002, however, that is clearly a
typographical error.

16

defendant Bates having been made aware of plaintiff's having medical needs because on

December 19, 2003, at 12:45 p.m., defendant Nuchols asked defendant Bates to document his

own right knee injury, which he injured when taking plaintiff down.  Plt's. Dep. 46: 20-25, 47: 1-

21; Opp., p. 2; see also, Def's Exh. K, p. 3, documenting a swollen right knee for which

defendant Nuchols was evidently treated and released on 12/19/03.

### *Legal Standard for Eighth Amendment Claim*

In order to state a § 1983 claim for violation of the Eighth Amendment based on

inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could

result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

that a prisoner has a serious need for medical treatment are the following:  the existence of an

injury that a reasonable doctor or patient would find important and worthy of comment or

treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

(9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

defined a very strict standard which a plaintiff must meet in order to establish "deliberate

indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

17

However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense—a subjective standard— disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at 1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837, 114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at 1981.  However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

1   Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

2   1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

3   to provide additional support for a claim of deliberate indifference; however, it does not end the

4   inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

5   medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

6   needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

7   the defendant."  McGuckin, 974 F.2d at 1061.

8            Superimposed on these Eighth Amendment standards is the fact that in cases

9   involving complex medical issues where plaintiff contests the type of treatment he received,

10  expert opinion will almost always be necessary to establish the necessary level of deliberate

11  indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

12  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

13  treatment he received equated with deliberate indifference thereby creating a material issue of

14  fact, summary judgment should be entered for defendants.  The dispositive question on this

15  summary judgment motion is ultimately not what was the most appropriate course of treatment

16  for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

17  criminally reckless.

18            *Discussion*

19            The difficulty for plaintiff in maintaining his claim of inadequate medical care

20  against defendant Bates is that even if, as plaintiff declares, Bates filed a false report about

21  having observed plaintiff and not having noted any injuries, plaintiff produces no medical

22  evidence whatsoever that he sustained serious injuries from the December 19, 2003, incident.

23  Plaintiff does not recall when he saw any doctor at all about his claimed injuries.  Plt's Dep.

24  48:8-9.  He testifies at his deposition that he was taking Tylenol for his back pain prior to the

25  incident the "[b]est back pain medicine I ever had" and has taken it since the incident and could

26  not recall his Tylenol dosage ever having changed subsequent to the incident.  Plt's Dep. 36: 1-

36.  Under these circumstances, with no medical evidence whatever presented to document any injuries, plaintiff does not even make a showing that he had delayed medical treatment causing any substantial harm, which, of itself, would not prove an Eighth Amendment violation.  The motion for summary judgment as to plaintiff's claim against defendant Bates should be granted.

Defendant Armstrong - Inadequate Medical Care

*Undisputed Facts*

As to defendant Armstrong, defendants offer no evidence to dispute plaintiff's allegation that when plaintiff was returned to his cell after the incident of December 19, 2003, defendant Armstrong had removed all of plaintiff's personal property, including his medications, refusing to give plaintiff his back and neck medications for 30 hours, causing plaintiff to suffer; defendants' failure to make any contention as to this allegation renders it an undisputed fact. FAC, p. 4; Pl. Dep. 48-52.

Plaintiff has not adequately supported that the pain to which he was subjected by the removal of his back pain medication by defendant Armstrong in the first hours after the incident to which he was allegedly subjected on December 19, 2003, as defendants note, was more than de minimis.  MSJ, p. 10.  As defendants argue, plaintiff has experienced back pain for some 20 years; his claim that he was without Tylenol for up to three days, following the alleged attack, states an insufficient claim.  Unlike in the context of an Eighth Amendment claim for excessive force, where what is at issue is the extent of the physical force used, Oliver v. Keller, supra, 289 F.3d at 628, and not the injury sustained, plaintiff, to show unconstitutionally inadequate medical care, must show a physical injury that is sufficiently serious to which defendants demonstrated deliberate indifference.  Farmer v. Brennan, 511 U.S. at 837-842, 114 S. Ct. at 1979-1981.  To this day, plaintiff has submitted no medical evidence in support of this claim.  Defendants' motion for summary judgment on plaintiff's claim for deliberate indifference to plaintiff's serious medical condition by the removal of his pain medication for 30 hours by defendant Armstrong should be granted.

20

1   Defendants Armstrong, Nuchols, Brewer,Von Rader, Bates - Conspiracy and Retaliation, Denial

2   of Access to Court Claims

3            *Undisputed Facts*

4            On January 16, 2004, defendant Armstrong reported in a general chrono that he

5   heard plaintiff yelling at inmate Smith.  Exh. L, General Chrono signed by Armstrong.

6   According to the chrono, plaintiff told inmate Smith that he was going to "beat the fuck" out of

7   him when B Facility came off lockdown.  Defendant Armstrong had previously heard plaintiff

8   having verbal altercations with approximately four other inmates on B Facility.  All of these

9   inmates had been identified as being aligned with the prison disruptive group known as the Crips.

10  DUF No. 25; Exh. L.  Defendant Armstrong stated further in the general chrono, dated 1/16/04,

11  that plaintiff had created a hostile atmosphere among the black inmate population on B Facility

12  and that he felt plaintiff's safety was in jeopardy and that plaintiff would not be capable of

13  programing in Facility B.  Exh. L.[12]

14           Plaintiff in deposition testimony claimed that inmate Smith was an undercover

15  correctional officer paid by the California Department of Corrections and Rehabilitation (CDCR)

16  to set up prisoners.  DUF No. 27; Pl.'s. Dep. 108:21-109:1.  Plaintiff contends correctional staff

17  keep the violent gangmembers of HDSP on a payroll.  DUF No. 28; Pl.'s. Reply Request Inj.

18  Rel., p. 7.

19           Plaintiff does not know who was responsible for the cell move which occurred on

20  January 16, 2004.  DUF No. 29; Pl.'s. Dep. 53:11.  Plaintiff cannot specify what, if any,

21  involvement defendants Nuchols, Brewer, Von Rader or Bates, had in the decision to change

22

23       [12]  Counsel attempts to set forth as an undisputed fact (DUF 26) that defendant
     Armstrong believed that plaintiff could not program on Facility B based only on Armstrong's
24   concerns with respect to plaintiff's alleged verbal altercations with inmates and the purported
     hostile atmosphere that he was creating among the black inmate population.  While this may be
25   so, because defendant Armstrong has submitted no declaration as to any such belief but relies
     solely on a general chrono, such an assertion with regard to Armstrong's sole concerns or his
26   beliefs is not properly founded.

plaintiff's cell assignment on January 16, 2004.  Pl.'s. Dep. 78:5-25; 80:1-7; Pl.'s Dec. in Opp., filed 1/30/06.[13]  Defendants aver that they did not agree to harm plaintiff.   Exh. D ¶ 11; Exh. E ¶ 11; Exh. F ¶ 8; Exh. G ¶ 6; Exh. H ¶ 7; Exh. I ¶ 8.   Plaintiff did not miss any court deadlines as a result of defendants' conduct.  DUF No. 54: Pl.'s. Dep. 105:2-6, 106:2-19.

### Plaintiff's Contention

Plaintiff contends that defendants Nuchols, Brewer,Von Rader and Bates moved plaintiff on January 16, 2004, in retaliation for his having filed an inmate appeal against them for what occurred on December 19, 2003.  Plaintiff attaches a copy of this grievance, dated January 2, 2004, to his FAC at p. 8.

### Discussion

### Retaliation

The Ninth Circuit treats the right to file a prison grievance as a constitutionally protected First Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance procedure is a constitutionally protected right, cited with approval in Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir. 1996) (retaliation for pursing a grievance violates the right to petition government for redress of grievances as guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d 677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation for filing prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854 F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation

---

[13]  In his declaration in opposition to the MSJ, with reference to the 1/16/04 cell transfer, plaintiff states that defendants Nuchols, Brewer, Von  Rader, Bates, Armstrong and Morring worked "in concert" to violate his constitutional rights under the Eighth Amendment, but provides no evidence therein as to how any of these defendants were responsible for his move.

1  omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for

2  complaint about food actionable).

3           In order to state a retaliation claim, a plaintiff must plead facts which suggest that

4  retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

5  behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

6  Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate

7  correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).

8  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d

9  136, 139 (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim,

10  because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810

11  F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a

12  prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's

13  constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

14                              Conspiracy

15           As to his claims of conspiracy, plaintiff must make some showing of an

16  agreement or a meeting of the minds on the part of defendants to violate his constitutional rights.

17  Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989), citing Fonda v. Gray, 707

18  F.2d 435 (9th Cir. 1983).  Conspiracy allegations must be supported by material facts and not be

19  merely conclusory statements.  Lockary v. Kayfetz, 587 F. Supp. 631 (N. D. Cal. 1984).

20  Moreover, to the extent that he claims that his transfer was illegal, plaintiff does not show an

21  actual deprivation of his constitutional rights resulting from the alleged conspiracy.  Woodrum,

22  supra, citing Singer v. Wadman, 595 F. Supp. 188 (D. Utah 1982) ("conspiracy allegation, even

23  if established, does not give rise to liability under § 1983 unless there is an actual deprivation of

24  civil rights").

25           Plaintiff's claims of retaliation by and conspiracy among defendants Nuchols,

26  Brewer, Von Rader and Bates in his January 16, 2004, cell move fails because plaintiff presents

23

1   no evidence that these defendants had any involvement in the cell change whatever.  As to the

2   cell change itself, as defendants note, plaintiff has no constitutional right to choose his cell (or his

3   cellmate – see below).  MSJ, p. 8.  In general, prison officials' housing and classification

4   decisions do not give rise to federal constitutional claims encompassed by the protection of

5   liberty and property guaranteed by the Fifth and Fourteenth Amendments.  See Board of Regents

6   v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701 (1972).  Nor does the Constitution guarantee a

7   prisoner placement in a particular prison or protect an inmate against being transferred from one

8   institution to another.   Meachum v. Fano, 427 U.S. 215, 223-225, 96 S. Ct. 2532, 2358 (1976).

9          As to plaintiff's claims of retaliation and conspiracy with respect to defendants

10   Nuchols, Brewer,Von Rader and Bates in his January 16, 2004, cell move, defendants' motion

11   for summary judgment should be granted.

12   Defendants Chacon and Barnard

13          *Undisputed Facts*

14          On Friday, April 2, 2004, defendant C/O Chacon was delivering meals to inmates

15   on the lower tier of section C8.   DUF no. 37; Exh. H ¶ 3; Exh. I ¶ 4; Exh. O, records pertaining

16   to incident of April 2, 2004.  As Chacon[14] was performing his duties, plaintiff asked him for

17   cleaning supplies.  Exh. H ¶ 4.  Defendants Chacon and Barnard documented in a rules violation

18   report that plaintiff threatened to stab defendant Chacon when defendant Chacon informed him

19   that supplies were issued on Saturday; there were two hearings on the incident, for which

20   plaintiff was found guilty, placed in administrative segregation for 90 days and assessed 90 days

21   loss of credits.  DUF Nos. 44-45: Exh. B, Exh. O.[15]  On April 2, 2004, plaintiff was placed in a

22

23          [14]  Although defendants assert as an undisputed fact (No. 39) that this was the first time
     that plaintiff had complained to defendant Chacon about his cell conditions, Exh. H ¶ 4, that fact
     remains in dispute given plaintiff's representations that he had asked the staff, including Chacon,
24   three times (or for three days) to supply him with cleaning supplies for a filthy cell.  FAC, p. 4;
     Opposition to MSJ (Opp.), p. 4.

25

26          [15]  While there is no dispute as to whether the incident was documented by defendants
     Chacon and Barnard or that he was found guilty and placed in Ad Seg, plaintiff disputes that he

                                                    24

new cell in Ad Seg and provided with cleaning supplies.  DUF No. 46: Pl.'s. Dep. 109:9-12.

Plaintiff did not miss any court deadlines as a result of defendants' conduct.  DUF No. 54: Pl.'s.

Dep. 105:2-6, 106:2-19.

### *Plaintiff's Contentions*

Plaintiff avers that defendant Chacon, on March 30, 2004, hindered his access to

the law library.  He contends that on April 2, 2004, that for the third time in seven days Chacon

failed to supply plaintiff with cleaning supplies for a filthy cell, contending he should have stayed

on the streets if he wanted supplies; he also claims that he called this defendant "a corrupt, fat

M.F.," after which Chacon began to yell that plaintiff threatened to stab him with a knife, a false

allegation in which defendant Barnard joined, and which led to plaintiff's placement in Ad Seg

on that same day.  FAC, p. 4; Opp., pp. 4-5; Plt's. Dep., 91-100.

### *Discusssion*

As to plaintiff's claim that defendant Chacon's actions caused plaintiff to be

denied law library access on March 30, 2004, as it is undisputed that plaintiff missed no court

deadlines, defendants are correct (MSJ, p. 12) that plaintiff has not met the requisite "actual

injury" necessary to support a claim for denial of access to the courts under the First Amendment.

Lewis v. Casey, 518 U.S. 343, 351-53, 355, 116 S. Ct. 2174 (1996) (prisoner must allege actual

injury).  The court held that before a denial of access to the courts claim can go forward, an

inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being

impeded."  Id.  Accordingly, before a claim of denial of access to the courts can proceed, an

inmate must demonstrate that he was precluded or thwarted in his efforts to present a legally or

factually arguable claim to the courts.  Plaintiff has failed to do so in this instance.  Defendants

motion for summary judgment as to defendant Chacon on this ground should be granted.

threatened defendant Chacon and disputes the accuracy of portions of the record of the hearing.
He maintains that defendant Chacon told him if he wanted cleaning supplies, he should have
stayed on the streets.  He concedes that he yelled and cursed at defendant Chacon.  Pl.'s. Dep. 91-
100.

1      Defendants are also correct that to the extent plaintiff is claiming that the

2   allegations against him are false (or that the record of the proceedings themselves contain

3   falsehoods) at the prison disciplinary actions which resulted in his having been found guilty and

4   his having been assessed 90 days of credit loss are barred by Heck v. Humphrey, 512 U.S. 477,

5   114 S. Ct. 2364 (1994), in this action for money damages.  MSJ, pp. 6-7.

6      In Heck, supra, an Indiana state prisoner brought a civil rights action under § 1983

7   for damages.  Claiming that state and county officials violated his constitutional rights, he sought

8   damages for improprieties in the investigation leading to his arrest, for the destruction of

9   evidence, and for conduct during his trial ("illegal and unlawful voice identification procedure").

10  Convicted on voluntary manslaughter charges, and serving a fifteen year term, plaintiff did not

11  seek injunctive relief or release from custody.  The United States Supreme Court affirmed the

12  Court of Appeal's dismissal of the complaint and held that:

13          in order to recover damages for allegedly unconstitutional
            conviction or imprisonment, or for other harm caused by actions
14          whose unlawfulness would render a conviction or sentence invalid,
            a § 1983 plaintiff must prove that the conviction or sentence has
15          been reversed on direct appeal, expunged by executive order,
            declared invalid by a state tribunal authorized to make such
16          determination, or called into question by a federal court's issuance
            of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages
17          bearing that relationship to a conviction or sentence that has not
            been so invalidated is not cognizable under 1983.

18

19  Heck, 512 U.S. at 486, 114 S. Ct. at 2372.  The Court expressly held that a cause of action for

20  damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the

21  conviction or sentence has been invalidated, expunged or reversed.  Id.

22      In Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584 (1997), the Supreme Court

23  held that Heck applies to challenges to prison disciplinary hearings when the nature of the

24  challenge to the procedures could be such as necessarily to imply the invalidity of the judgment.

25  Edwards rejected the Ninth Circuit's holding in Gotcher v. Wood, 66 F.3d 1097, 1099 (9th Cir.

26  1995) that a claim challenging only the procedures employed in a disciplinary hearing is not

26

barred by <u>Heck</u>.  Plaintiff has made no showing that the disciplinary findings have been invalidated; therefore, defendants' motion for summary judgment as to plaintiff's claims against defendants Chacon and Barnard should be granted.

To the extent that plaintiff claims that he was confined in an unsanitary cell for six or seven days without cleaning supplies and that defendant Chacon did not supply him with cleaning supplies for that period, defendants are again correct that plaintiff's claim does not rise to a constitutional deprivation.  MSJ, p. 11.  "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000), citing, inter alia, <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994).  When an inmate has been deprived of necessities, "the circumstances, nature and duration of a deprivation...must be considered in determining whether a constitutional violation has occurred. <u>Johnson</u>, <u>supra</u>, at 731.  "'[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.'" <u>Id</u>., quoting <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir. 1995).  <u>Hutto v. Finney</u>, 437 U.S. 678, 686-687 (1978) ("[a] filthy, overcrowded cell and a diet of 'grue[l]' might be tolerable for a few days and intolerably cruel for weeks or months.")  Under the circumstances that plaintiff has set forth, defendant Chacon is entitled to judgment in his favor with respect to the allegations about plaintiff's cell conditions due to the relatively short duration of those conditions.

<u>Defendant Morring</u>

### *Undisputed Facts*

On April 21, 2004, defendant Morring spoke with plaintiff regarding his willingness to accept a cellmate.  DUF No. 47: Exh. G ¶ 4; Exh. P, records pertaining to incident of April 21, 2004.  Prison officials had cleared plaintiff to be doubled celled; defendant Morring maintains that plaintiff refused to accept a cellmate.  Exh. G, p. 4;  Exh. P.  Plaintiff was issued a rules violation report by defendant Morring for wilfully delaying a peace officer.  Exh. P.

1   Correctional Lieutenant Peddicord (not a defendant) found plaintiff guilty of this charge at a rules

2   violation hearing; plaintiff was docked 90 days of time credit and his canteen privilege was

3   suspended for 90 days.  DUF No. 50: Exh. P.  The record of the hearing sets forth that plaintiff

4   said, in part: "You can't make me live with anyone. I'm refusing all cellies." Exh. P, p. 4.[16]

5                    *Plaintiff's Contentions*

6            Plaintiff challenges defendant Morring's veracity with respect to his claim that

7   plaintiff  refused all cellmates, claiming instead that, on April 21, 2004, Morring was carrying

8   out a threat to see that plaintiff was moved to Ad Seg and deprived of his canteen privileges.

9   FAC, pp. 4, 14.  Plaintiff avers that he was willing to take a cellmate that he found compatible

10  and that it was lie, as reported in the prison disciplinary hearing records, that he would refuse all

11  cellmates.  Plt's. Dep., pp. 81-82.

12                    *Discussion*

13           Although plaintiff averred that on January 16, 2004, defendant Morring and

14  former defendant Campbell engaged in conspiratorial acts against plaintiff, these allegations with

15  respect to that date relate only to Campbell, who has been dismissed as a defendant.  FAC, p. 4,

16  Opp., p. 3.

17           With respect to plaintiff's claims that defendant Morring lied in filing a rules

18  violation report against him to have him placed in Ad Seg and deprive him of canteen, and that

19  the record of the hearing contains falsehoods, plaintiff is challenging the procedures of a

20  disciplinary action which resulted in a 90 day loss of time credits (as well as a loss of canteen

21  privileges).  For that reason, plaintiff's allegations in this § 1983 action seeking money damages

22  that defendant Morring lied, or that the hearing record contains falsehoods, are <u>Heck</u>-barred (<u>see</u>

23  earlier discussion), as plaintiff has not shown the guilty finding of that hearing to have been

24  invalidated.

25

26           [16]   There is no dispute that the hearing occurred, but in his deposition, plaintiff disputes
     the veracity of this statement.  Pl's. Dep. 82:9-13.

1        In addition, as defendants note, double celling is constitutional, nor does plaintiff

2  have a constitutional right to a choice of cellmate.  MSJ, p. 8, citing <u>Rhodes v. Chapman</u>, 452

3  U.S. 337, 349-351, 101 S. Ct. 2392, 2400-2401 (1981).  Moreover, plaintiff, as defendants argue,

4  has no constitutional right to canteen privileges.  MSJ, p. 8, citing <u>Keenan v. Hall</u>, 83 F.3d 1083,

5  1092 (9th Cir. 1996).  As to his placement in Ad Seg, plaintiff's placement therein for 90 days

6  does not implicate the Constitution.  MSJ, p. 8, citing <u>Jones v. Baker</u>, 155 F.3d 810, 812-813 (9th

7  Cir. 1998), in turn citing <u>Sandin v. Conner</u>, 515 U.S. 472, 483, 115 S. Ct. 2293 (1995), finding

8  that a two and a half year confinement in Ad Seg did not violate a prisoner's rights.

9        Defendants' motion for summary judgment as to plaintiff's claims against

10  defendant Morring should be granted.

11        Accordingly, IT IS HEREBY RECOMMENDED that:

12        1.  Defendants' motion for summary judgment, filed on May 26, 2006:

13        a)  be denied as to plaintiff's claims of excessive force on December 19, 2003,

14  against defendants Nuchols, Brewer and Von Rader;

15        b) be granted as to all other claims against defendants Nuchols, Brewer and Von

16  Rader;

17        c) be granted as to defendants Bates, Armstrong, Morring, Chacon, and Barnard;

18  and

19        2.  This matter proceed against defendants Nuchols, Brewer and Von Rader only

20  on plaintiff's claims of excessive force on December 19, 2003, for money damages solely.

21        These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23  days after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26  shall be served and filed within ten days after service of the objections.  The parties are advised

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:   1/26/07

4                                                    /s/ Gregory G. Hollows

5                                                    GREGORY G. HOLLOWS
                                                     UNITED STATES MAGISTRATE JUDGE

6  GGH:009
   jack0983.msj
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26